IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY MARSH, as next of kin and personal representative of the Estate of ELLEN MARSH | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 22 C 50023 |
| v. | ) ) | Hon. Philip G. Reinhard |
| GARY CARUANA, Winnebago County Sheriff, individually and in his official capacity, ROBERT REDMOND, Winnebago County Jail Superintendent, individually and in his official capacity, THE SALVATION ARMY, and WINNEBAGO COUNTY | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

The Winnebago County defendants' motion for judgment on the pleadings [20] is granted. Plaintiff is given three weeks from the date of this order to file an amended complaint.

**STATEMENT-OPINION**

On January 30, 2021, Shane Bouma, who was then on furlough, allegedly raped, strangled, and killed Ellen Marsh, a 74-year old woman. This lawsuit is brought by Timothy Marsh who is Ms. Marsh's son and the representative of her estate. Plaintiff is asserting § 1983 and state law claims against three Winnebago County defendants, and is asserting state law claims against The Salvation Army. Before the court is a motion for judgment on the pleadings filed by Gary Caruana, Winnebago County Sheriff; Robert Redmon, Winnebago County Jail Superintendent, and Winnebago County (collectively referred to as the "Winnebago County defendants" or sometimes as just "defendants"). The only other defendant in the case is The Salvation Army, which has not filed a motion to dismiss or joined in the present motion.

# ALLEGATIONS OF THE COMPLAINT[1]

Winnebago County has a program allowing inmates to be released from jail on "furlough" and to then participate in recovery programs. ¶ 18. The State's Attorney can object to a furlough request. Such objections are based in part on an assessment of the inmate's propensity for violence. ¶ 19. If inmates violate the terms of their furlough, they are in violation of the conditions of their bond, which is considered to be the criminal offense of escape. ¶ 21.

When inmates are released on furlough, they are housed at a rehabilitation center operated by defendant The Salvation Army. ¶ 15. This facility, which is located in Rockford, is called the Salvation Army's Men's Adult Rehabilitation Center for criminal offenders (the "Rehabilitation Center"). *Id.* The Salvation Army takes control of the furloughed inmates, including in this case Shane Bouma, who participate in an intensive, in-patient drug rehabilitation program. ¶ 16. The Rehabilitation Center is required to monitor the inmates. ¶ 22. The Rehabilitation Center transports inmates to and from the Winnebago County Jail, and is responsible for the inmates throughout this time. ¶¶ 23-24.

Plaintiff alleges generally that the Winnebago County furlough program has been a historical failure. ¶¶ 27-28. The complaint describes two instances, one in late 2019 and another in April 2021, when inmates who had a violent criminal history committed crimes while on furlough. ¶¶ 29-39. Plaintiff alleges that the furlough program puts the public in danger of being harmed by inmates who have a history of committing violent crimes. ¶ 40.

Shane Bouma, the man alleged to have killed Ellen Marsh, has a criminal history going back to 1997, which includes the following six convictions over an 11-year period:

- possession of a stolen motor vehicle—October 19, 2007
- burglary—June 9, 2013
- violation of an order of protection—March 21, 2017
- two counts of retail theft—April 6, 2017
- resisting a peace officer—April 6, 2017
- threatening a public official—May 15, 2018

¶¶ 45-50. At the time of his escape, he was charged in Winnebago County with threatening a public official and also had a pending criminal case for violation of an order of protection. ¶¶ 52-53.

On July 31, 2020, Bouma appeared before a Winnebago County Circuit Judge who granted him a furlough to the Rehabilitation Center to undergo substance abuse treatment. ¶ 58.

On September 24, 2020, Bouma appeared in court. He was again granted a furlough by the court to the Rehabilitation Center. ¶ 59. At this time, it was reported that Bouma, previously while

---

[1] This summary tracks the allegations of the complaint and in some instances directly quotes from the complaint, although the court has omitted quote marks for stylistic convenience.

at the Center, had been given a day pass but had not returned that same day, thus violating the conditions of his bond. *Id.*

On November 19, 2020, Bouma was scheduled to appear for a status hearing. However, he did not appear, and the court then ordered him to appear at the next scheduled date for his pending criminal charge. ¶ 60.

On December 21, 2020, a status hearing was held, and Bouma again failed to appear. ¶ 61. No warrant was issued at this time, nor was one requested by the State. ¶ 62. The case was continued to February 2, 2021. *Id.*

On January 30, 2021, Bouma went to his girlfriend's house. ¶ 71. His girlfriend called the police to report a domestic battery. Before police arrived, Bouma left his girlfriend's house and hid between her house and Ms. Marsh's house. ¶ 72. He then knocked on Ms. Marsh's door and forced himself inside and sexually assaulted her and strangled her to death. ¶¶ 73-77.

On January 31, 2021, Bouma was arrested and charged with 22 criminal counts relating to Ms. Marsh's death, including first-degree murder, home invasion, aggravated criminal sexual assault, and robbery. ¶¶ 41-42, 64.

The complaint contains the following six counts:

- **Count I:** 42 U.S.C. § 1983 due process claim under the Fourteenth Amendment asserted against the Winnebago County Sheriff's Department, Winnebago County, and the Winnebago County Jail
- **Count II:** 42 U.S.C. § 1983 due process *Monell* claim under the Fourteenth Amendment asserted against the Winnebago County Sheriff's Department, Winnebago County, and the Winnebago County Jail
- **Count III:** a negligence claim asserted against the Winnebago County Sheriff's Department, Winnebago County, the Winnebago County Jail, and The Salvation Army
- **Count IV:** a willful and wanton claim asserted against the Winnebago County Sheriff's Department, the Winnebago County Jail, and The Salvation Army
- **Count V:** a wrongful death claim asserted against the Winnebago County Sheriff's Department, the Winnebago County Jail, and The Salvation Army
- **Count VI:** a survival act claim asserted against the Winnebago County Sheriff's Department, the Winnebago County Jail, and The Salvation Army.

## **STANDARD OF REVIEW**

Before the court is defendants' motion for judgment on the pleadings pursuant to Rule 12(c). A Rule 12(c) motion is governed under the same standard as a Rule 12(b)(6) motion. *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). When evaluating a Rule 12(b)(6) motion to dismiss, the court must "accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving parties." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (cleaned up). "To state a claim, a complaint must first provide 'a short and plain statement of the

3

claim showing that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). "The statement of the claim must sufficiently give 'fair notice of what the [] claim is and the grounds upon which it rests' to the defendants." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ANALYSIS

The Winnebago County defendants move to dismiss all six counts as against them. They first raise a series of arguments about whether they are proper § 1983 defendants. Defendants note that Sheriff Gary Caruana and Jail Superintendent Robert Redmond are not named specifically as a defendant in any of the six counts. They further argue that plaintiff has not alleged that these two individuals were personally involved in the decision to furlough Bouma. *See generally Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022) (the appropriate defendants to a § 1983 claim are the officials that "personally caused or participated in a constitutional deprivation"). The court agrees with these arguments and dismisses the counts as against these two individual defendants.

Defendants next argue that the Winnebago County Sheriff's Department and the Winnebago County Jail are not suable legal entities for purposes of a § 1983 claim. This court also agrees with this argument. *See White v. Knight*, 710 F. Appx. 260, 262 (7th Cir. 2018) (unpublished) ("As for the defendant prison, the Correctional Industrial Facility, a building is not a person capable of being sued under § 1983."); *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("[T]he district court was correct that, in listing the Knox County Jail as the sole defendant, Smith named a non-suable entity."). In his response brief, plaintiff does not respond to these arguments other than to state that he hopes to develop a basis for liability in discovery. [29 at p.5.] But this is a legal issue, not a fact dispute.

Putting aside whether a proper § 1983 defendant has been named, defendants' broader argument is that the two § 1983 counts fail because none of the Winnebago County defendants had any constitutional duty to protect Ms. Marsh from Shane Bouma. In 1989, the Supreme Court held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). Over the years, lower courts have derived two limited exceptions from *DeShaney*'s general rule. These exceptions are based on several sentences in *DeShaney*. Although the Seventh Circuit recognizes these exceptions, it has recently raised some doubts about one of them, as will be noted below. The first exception applies when the state takes custody of a person. In this situation, "the state has an affirmative duty to provide for the safety of a person it has taken into its custody involuntarily." *First Midwest Bank, Guardian of the Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 988 (7th Cir. 2021). This is sometimes called the "special relationship exception." The classic example is a prisoner who, by virtue of his incarceration, cannot independently take care of himself. But this first exception is not applicable to the present case because plaintiff has not alleged that any of the Winnebago County defendants had control or custody of Ellen Marsh at any point. Although plaintiff has occasionally used the language of custody in his response brief, he does not explicitly argue that this exception is applicable.

The second exception is the "state-created danger" exception, and it is potentially available when the government "affirmatively creates a danger that injures the individual." *Jaimes v. Cook Cnty.*, 2022 WL 2806462, *3 (7th Cir. July 18, 2022). Plaintiff seeks to rely on this exception. The Seventh Circuit uses the following three-part test to determine whether this exception is available:

> (1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question "shocks the conscience."

*Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019).

Before applying this test, the court notes two general points. First, in *Weiland v. Loomis*, 938 F.3d 917 (7th Cir. 2019), the Seventh Circuit expressed doubt about whether this exception was appropriately derived from *DeShaney* and whether the only exception should be the special relationship exception covering the situation when "the state has impaired the plaintiff's powers of self-help or ability to obtain help from others."[2] *Id.* at 921. The Seventh Circuit suggested that this question might "be presented for consideration in some future case." *Id.* Second, the Seventh Circuit has repeatedly emphasized that the state-created danger exception is narrow. *See Jaimes*, 2022 WL 2806462, at *3 ("We have stressed that liability under the state-created danger theory has only been found under 'rare and often egregious' circumstances."); *Hoeppner*, 939 F.3d at 876 (the exception is "quite narrow" and "reserved for 'egregious' conduct by public officials"); *LaPorta*, 988 F.3d at 988 ("The *DeShaney* exception for state-created dangers is narrow.").

Applying the test here, the court will assume that the first and third requirements could be met, even though the court also has doubts about the third requirement. However, plaintiff clearly cannot meet the second requirement. It is essentially a proximate cause inquiry. The Seventh Circuit has held that the risk created by the government actors must be a risk tied to a particular person or a particular sub-group of people rather than being a risk faced by the general public. If the risk is merely the latter, then the causation requirement is not met. In *LaPorta*, the Seventh Circuit stated: "To satisfy the proximate-cause requirement, the state-created danger must entail a foreseeable type of risk to a foreseeable class of persons. *A generalized risk of indefinite duration and degree is insufficient*." 988 F.3d at 988-89 (cleaned up, emphasis added).

A case aptly illustrating this principle—that a generalized risk to the public is not enough—is *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824 (7th Cir. 2009). This case is worth considering in greater detail. An offender with a history of mental illness was released from the county jail even though officials knew he had a long history of "assaultive and violent attacks" (35 arrests in a 10-year period). *Id.* at 826. After being released, the offender broke into a home on the north side of Milwaukee. A neighbor "unwittingly" crossed his path, and the offender shot and killed him. *Id.* at 825. The neighbor's survivors brought suit in federal court alleging that the County of Milwaukee and other government entities were at fault because they knew the offender

---

[2] The Seventh Circuit cited to a Sixth Circuit case expressing similar doubts. *See Estate of Romain v. City of Grosse Pointe Farms*, 935 F.3d 485, 493-94 (6th Cir. 2019) ("Whether or not our test can be defended based on the one sentence in *DeShaney*, it surely runs counter to the opinion's general thrust—that the Due Process Clause is ill-suited for claims seeking state protection from private violence.").

had a violent history, failed to medicate him when he was in jail and before he was released again, failed to keep track of his violent history, and generally placed the public (including people like the neighbor) at a greater risk of violence.

The defendants filed a Rule 12(c) motion for judgment on the pleadings, "arguing that there was no constitutional right to be protected from violence by a private individual." *Id.* at 826. The district court agreed and granted the motion, and the Seventh Circuit affirmed. The Seventh Circuit began its analysis by citing to *DeShaney* and noting the basic background principle that the Constitution "generally does not impose upon the state a duty to protect individuals from harm by private actors." *Id.* at 827. The court then found that the state-created danger exception was not available because the second requirement (causation) had not been met since the neighbor was not a "foreseeable victim."

The appellants in *Buchanan-Moore* relied heavily on an earlier Seventh Circuit case—*Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993). In *Reed*, the police arrested a sober driver of a car leaving a drunk passenger behind who later in the day drove the car and wrecked it into another car injuring several people. The Seventh Circuit found that the causation requirement had been met because the other drivers on the road were foreseeable victims. In *Buchanan-Moore*, the Seventh Circuit distinguished *Reed* by noting that it contained several "limiting factors." *Id.* at 828. These included: (i) "the dangers presented by drunk drivers were familiar and specific"; (ii) the "threat of harm to other motorists was limited in both time and scope"; and (iii) "the plaintiffs were within a small, defined group of potential victims." *Id.* Specifically, the risk was confined to "only those motorists traveling on the same highway," and lasted "only for a matter of hours" (*i.e.* the small window of time it would take for the driver of the car to "sober up"). *Id.* In contrast, the Seventh Circuit held that the scenario presented in *Buchanan-Moore* was more diffuse and attenuated. The neighbor who was killed was not in a sufficiently "definable population." *Id.* Stated differently, the danger was only "to the public at large."[3] *Id.* The Seventh Circuit rejected appellants' argument that a risk to all the residents of a city, or even to all the residents of a smaller section within that larger city, could meet the causation requirement. The Seventh Circuit explained:

> Appellants allege that Moore was a foreseeable victim because he lived on Milwaukee's "north side," the same section of town in which the County released Gray. But Milwaukee's "north side" represents a large geographic and heavily populated area. The danger posed to Moore by his geographic locale was shared by the thousands of others who lived in that section of town as well as those living in any community accessible to Gray by foot, and perhaps even by public transit. Such a generalized, amorphous zone of danger is insufficient to trigger a state duty to protect.

*Id.* at 828 (footnote omitted).

---

[3] This holding was based on the Supreme Court's 1980 decision in *Martinez v. State of California*, 444 U.S. 277, 285 (1980).

Here, although each side cites to a number of cases, their arguments ultimately boil down to a battle between *Buchanan-Moore* and *Reed*. Defendants rely heavily on the former case, arguing that "[t]here is no daylight between *Buchanan-Moore* and this case." [30 at p. 11.] Plaintiff argues that "[t]his case is similar to *Reed*." [12 at p. 20.] In this figurative battle, *Buchanan-Moore* is clearly the winner. It is the more recent and more relevant case. It involved what defendants accurately describe as a "nearly identical" factual scenario. [30 at p. 10.] Just as the risk to the residents of the north side of Milwaukee was held to be too amorphous to meet the causation requirement, so too is the risk to all the residents of Winnebago County. Plaintiff has consistently defined the population at risk as being *all* the residents of Winnebago County. *See, e.g.*, Cmplt., ¶ 84 ("Defendants [] had a special relationship with the *residents of Winnebago County*, including Ms. Ellen Marsh, in that such persons, were foreseeably accessible to Bouma, an escaped and dangerous inmate.") (emphasis added); Pl. Resp. at p. 9 (referring to the risks to the "*residents of Winnebago County*, including Ms. Ellen Marsh") (emphasis added). The complaint contains no allegations that Ms. Marsh was in greater danger than the "thousands of others" living in Winnebago County. In fact, one reason why Ms. Marsh's murder is so tragic is the random nature of it.

For these reasons, the court finds that the holding of *Buchanan-Moore*, and other cases including the Supreme Court's decision in *Martinez*, applies here. *See, e.g.*, *Brown v. Reyes*, 815 F.Supp.2d 1018, 1023-24 (N.D. Ill. 2011) (granting a motion to dismiss and entering final judgment as to government defendants: "Like the plaintiff in *Buchanan–Moore,* Brown does not allege that Reyes's inaction exposed a *specific segment* of the population to danger.") (emphasis added). Moreover, unlike *Reed*, the risks here were not confined to a small window of time or to a discrete physical area such as one highway. There is a gap of several months between when Bouma was last seen in court and when he allegedly murdered Ms. Marsh. This fact also cuts against a finding of proximate cause. *See, e.g.*, *Fields v. Klegman*, 2022 WL 971529, *11 (N.D. Ill. Mar. 31, 2022) (relying on *Buchanan-Moore*: "There is a gap of about three months between Klegman's denial of police protection and Kelley's death. That gap is too long, and the risk too indefinite, to satisfy the requirements of proximate causation."). Finally, the larger allegation animating the complaint—that the furlough program has been a historical failure—strikes this court as being more of a political question that should be addressed by voters rather than resolved through a federal lawsuit.

For all these reasons, the court finds that plaintiff cannot meet the proximate cause requirement and thus cannot satisfy the state-created danger exception. Therefore, counts I and II must be dismissed.

The court next considers the remaining four counts as they relate to the Winnebago County defendants. Winnebago County is not named as a defendant in counts IV, V, and VI. Moreover, as noted above, the court has found that the Winnebago County Sheriff's Department and the Winnebago County Jail are not suable entities. This means that counts IV, V, and VI should be dismissed because there are no remaining Winnebago County defendants named in them. This leaves only count III against defendant Winnebago County. Count III is an Illinois negligence claim arising out of these same allegations.

Defendants argue that this claim also should be dismissed, as against Winnebago County, based on three separate provisions in the Illinois tort immunity act. Specifically, defendants rely on the following three provisions:

- **745 ILCS § 10/4-102** ("Neither a local public entity nor a public employee is liable for failure to . . . provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals.")
- **745 ILCS § 10/4-107** ("Neither a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or by releasing a person in custody.")
- **745 ILCS 10/4-106(b)** ("Neither a local public entity nor a public employee is liable for: (a) [a]ny injury resulting from determining to parole or release a prisoner, to revoke his or her parole or release, or the terms and conditions of his or her parole or release [or] (b) [a]ny injury inflicted by an escaped or escaping prisoner.")

In defendants' opening brief, they cited to these three provisions, and also cited to cases applying them under similar facts, and argued that these provisions defeat plaintiff's state law claims as applied to any Winnebago County defendant. In plaintiff's response brief, he did not respond to any of these arguments. He did not offer any argument as to why the straightforward language of these provisions should not apply to his allegations, nor did he offer any contrary cases. In their reply, defendants argue that plaintiff has thus waived any arguments against dismissal. This court agrees. The only argument plaintiff has made is to suggest that the doctrine of qualified immunity, applicable to the two § 1983 claims, is typically not resolved on a motion to dismiss. But this argument did not address the separate state law statutory immunity argument. Given plaintiff's failure to respond, the court dismisses count III as against Winnebago County.

It is not clear whether any of these issues can be corrected in an amended complaint. However, the court will give plaintiff three weeks to file an amended complaint if he desires to do so and if he can do so consistent with this order.

Finally, the court wishes to make clear that this ruling should not be taken in any way to minimize the tragic and senseless death of Ellen Marsh nor the pain that this tragedy has undoubtedly visited upon her family.

Date: 11/17/2022          ENTER:

                                                *Philip G. Reinhard*
                                        United States District Court Judge

                                                                       Electronic Notices.